## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PEOPLES NATIONAL BANK, N.A., )<br><br>     Plaintiff, )<br><br>vs. )<br><br>DEBRA J. MEHLMAN, individually )<br>and as trustee of the Debra J. Mehlman Living )<br>Trust, dated October 12, 2004, )<br><br>and )<br><br>MARK S. MEHLMAN, )<br><br>and )<br><br>MEHLMAN HOMES REALTY, LLC, )<br><br>and )<br><br>MARK S. MEHLMAN HOMES, LLC, )<br><br>and )<br><br>MARK S. MEHLMAN REALTY, INC., )<br><br>and )<br><br>SCOTT MEHLMAN, )<br><br>and )<br><br>BLAIR MEHLMAN, )<br><br>     Defendants. ) | Case No.   4:15-cv-996<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Peoples National Bank, N.A. ("Peoples"), by and through its undersigned

counsel, for its complaint against Defendants Debra J. Mehlman, individually ("Wife") and as

Trustee of the Debra J. Mehlman Living Trust, dated October 12, 2004 ("Wife's Trust"), Mark S.

1

Mehlman ("Husband"), Mehlman Homes Realty, LLC ("MHR"), Mark S. Mehlman Homes, LLC ("MSM Homes"), Mark S. Mehlman Realty, Inc. ("MSM Realty"), Scott Mehlman ("S. Mehlman"), and Blair Mehlman ("B. Mehlman"), states as follows:

## INTRODUCTION

1.     This lawsuit involves a "shell game" perpetrated by Defendants, whereby Defendants have transferred assets and diverted income with the intent to make a $1.2+ million judgment entered against Husband and his company, MSM Realty, uncollectable.  Wife did not sign the notes or a guaranty in favor of Peoples.  Husband and Wife continue to operate the same business they have for years, though now they merely operate through MHR, which is not a borrower on the debt.   Husband and Wife have further diverted income from their new companies, that should otherwise be payable to Husband, to Wife's Trust.  Husband and Wife continue to enjoy a lavish lifestyle (living in an affluent condominium development in Clayton), while at the same time claiming that Husband lacks assets to satisfy the judgment entered against him.  Peoples brings this lawsuit in order to set aside and void the various fraudulent and improper transfers and diversions perpetrated by Defendants and to hold all Defendants and their assets liable for the judgment previously entered in favor of Peoples.

## PARTIES

2.     Peoples is a national banking association with its principal place of business and main office located in the State of Illinois.

3.     Wife is an individual currently residing in the State of Missouri.

4.     Wife is the sole settlor and trustee of Wife's Trust, a revocable trust dated October 12, 2004, executed in the State of Missouri and governed by the laws of the State of Missouri.

5.     Husband is an individual currently residing in the State of Missouri.

6. MHR is a Missouri limited liability company. Its sole member is Wife's Trust.

7. MSM Homes is a Missouri limited liability company. Its members are all citizens of the State of Missouri.

8. MSM Realty is a Missouri corporation with its principal place of business located in the State of Missouri.

9. S. Mehlman is an individual currently residing in the State of Missouri.

10. B. Mehlman is an individual currently residing in the State of Missouri.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter because all Defendants are diverse from Plaintiff. Further, the amount in controversy exceeds $75,000 in that Peoples seeks satisfaction of a $1.2+ million judgment (excluding interest, costs and attorneys' fees) against Defendants.

12. Venue is proper in this district because all Defendants reside within this district and/or because all or substantially all of the events giving rise to the claims set forth herein occurred in this district.

## GENERAL ALLEGATIONS

### The Loans and the Collection Judgment

13. On or about March 13, 2007, Peoples made a loan to MSM Realty in the principal amount of $3,100,000 (the "First Loan").

14. Payment of the First Loan was guaranteed by Husband.

15. By an agreement dated March 13, 2008, Peoples and MSM Realty agreed to modify certain terms of the First Loan.

16. On or about November 28, 2008, Peoples made a second loan to MSM Realty in the principal amount of $511,276.00 (the "Second Loan"; the First Loan and the Second Loan, collectively, the "Loans").

17. Payment of the Second Loan was guaranteed by Husband.

18. In order to induce Peoples to make the Loans, Husband submitted various financial statements to Peoples. In these financial statements, Husband purported to list his assets and liabilities.

19. Peoples relied on the representations of Husband in the financial statements when making the Loans and when agreeing to modify the First Loan.

20. The First Loan matured on March 19, 2009.

21. The Second Loan matured on March 28, 2009.

22. On April 22, 2009, Peoples formally notified MSM Realty and Husband that the Loans had matured and were due and payable and demanded payment from MSM Realty and Husband.

23. On January 28, 2011, Peoples filed a lawsuit for a deficiency judgment against MSM Realty and Husband, which lawsuit was captioned Peoples National Bank v. Mark S. Mehlman Realty, Inc., et al., Case No. 11SL-CC00378, St. Louis County, MO (the "Collection Lawsuit").

24. On January 15, 2013, the Honorable Colleen Dolan entered judgment by summary judgment against MSM Realty and Husband, jointly and severally, in the Collection Lawsuit in the amount of $1,264,672.01 (the "Collection Judgment"). A true and correct copy of the Collection Judgment is attached hereto as Exhibit 1 and incorporated herein by reference. MSM Realty and Husband appealed the Collection Judgment to the Missouri Court of Appeals,

Eastern District, which affirmed the Collection Judgment on or about January 3, 2014. A true and correct copy of the appellate order confirming the Collection Judgment is attached hereto as Exhibit 2 and incorporated herein by reference.

25.     MSM Realty and Husband have failed to satisfy the Collection Judgment and it remains outstanding.

26.     Peoples has undertaken certain post-judgment efforts to collect upon the Collection Judgment, including issuing certain garnishments to MHR and MSM Homes.

27.     Peoples has filed exceptions to garnishment answers made by MHR and/or MSM Homes and is seeking relief against MHR and/or MSM Homes based on theories similar to some of the causes of action asserted in this pleading. However, Peoples will not be able to seek all relief to which it is entitled to by way of the garnishment proceedings. Among other things, the garnishment proceedings are limited in time and are directed only against MHR and MSM Homes, not the other Defendants in this lawsuit.

28.     In addition to its post-judgment collection efforts, Peoples has sought certain post-judgment discovery in the Collection Lawsuit. Peoples only discovered Defendants' bad acts and Defendants concealment of same when it undertook such post-judgment discovery. Certain information obtained by Peoples in the Collection Lawsuit has been designated as "confidential"; absent an agreement among the parties, Peoples will not use information designated as "confidential" in the Collection Lawsuit in this lawsuit, and reserves the right to pursue additional discovery in this lawsuit.

**Continuation of Business as MHR**

29.     MSM Realty (i.e., one of the judgment debtors) ceased business operations in 2010, after the Loans matured and were due and payable and after Peoples demanded payment on the Loans.

30.     Before it ceased business operations, MSM Realty acted as a real estate brokerage company and a property management company.

31.     Husband was the president and sole owner of MSM Realty.

32.     At the time MSM Realty ceased doing business operations (among other things):

     a.     Husband held the broker's license that permitted MSM Realty to act as a real estate brokerage company and conduct real estate transactions;

     b.     Wife, S. Mehlman and B. Mehlman were the licensed real estate salespeople acting under Husband's brokerage license for MSM Realty;

     c.     MSM Realty managed a number of commercial properties;

     d.     MSM Realty maintained an office at 50 S. Bemiston, Clayton, MO;

     e.     MSM Realty maintained a phone number for business purposes; and

     f.     MSM Realty utilized various office furnishing and fixtures for business purposes.

33.     At the time MSM Realty ceased business operations, the assets and operations of MSM Realty were transferred to MHR in order to put them out of reach of MSM Realty's creditors, including Peoples.

34.     MHR was formed in 2010.

35.     MHR acts a real estate brokerage company and a property management company.

36.     Husband is the sole manager of MHR.

37.   Wife's Trust is the sole member and owner of MHR.

38.   Once MHR was formed (among other things):

   a.   Husband held the broker's license that permits MHR to act as a real estate brokerage company and conduct real estate transactions;

   b.   Wife, S. Mehlman and B. Mehlman were the licensed real estate salespeople acting under Husband's brokerage license;

   c.   MHR took over management of the commercial properties previously managed by MSM Realty;

   d.   MHR operated from the same office location at 50 S. Bemiston from which MSM Realty had operated;

   e.   MHR began using the phone number previously used by MSM Realty; and

   f.   MHR began using the various office furnishings and fixtures for business purposes as those previously utilized by MSM Realty.

39.   Upon information and belief, MHR received all or substantially all of the assets of MSM Realty in or about 2010 and continued to operate the same business as that operated by MSM Realty.

40.   Upon information and belief, MSM Realty did not receive fair or adequate consideration for its transfer of all or substantially all of its assets to MHR.

**Compensation from MHR to Husband**

41.   Husband receives a salary from MHR.

42. Based on the income of MHR and Husband's role as sole manager and broker of MHR, however, Husband's salary is not an arm's length salary. In other words, Husband does not receive adequate consideration for the services he renders to and on behalf of MHR.

43. Wife and/or Wife's Trust, on the other hand, due to Wife's Trust owning MHR, receives a greater amount of profits from MHR because Husband is not paid a fair salary for his services (i.e., Husband's salary is not commensurate with usual and customary broker/salesperson compensation).

**(Lack of) Compensation from MSM Homes to Husband**

44. MSM Homes was formed in or around 2009.

45. MSM Homes provides construction and construction management services.

46. Wife's Trust and Husband's children, S. Mehlman and B. Mehlman, own MSM Homes.

47. Husband is the sole manager of MSM Homes.

48. As the sole manager, Husband performs services for MSM Homes.

49. Husband receives no income from MSM Homes (i.e., the company that bears his name – Mark S. Mehlman Homes, LLC). Husband thus does not receive adequate consideration for the services he renders to and on behalf of MSM Homes. Rather, money that should be otherwise payable to Husband is diverted to Wife, Wife's Trust, S. Mehlman and/or B. Mehlman, in a further effort to avoid Husband's obligations to Peoples.

**Commingling of Funds**

50. Upon information and belief, Wife's Trust, as sole owner of MHR, receives all profits generated by MHR.

51.    Upon information and belief, Wife's Trust, S. Mehlman and B. Mehlman, as owners MSM Homes, receive profits generated by MSM Homes.

52.    Upon information and belief, Husband and Wife commingle their income and assets and use the same jointly.

**Fraudulent and Improper Transfers and Diversions**

53.    Defendants' entire scheme and each act thereof, from diverting income from Husband to Wife and/or Wife's Trust, to operating the same business under a new name, was motivated and carried out with the actual intent to hinder, delay, or defraud Peoples.

54.    Because of the various transfers and diversions set forth herein, Peoples has been and will be unable to collect upon the Collection Judgment.

55.    Since MHR and MSM Homes were formed, Husband and MSM Realty have been insolvent.

### COUNT I
**(Fraud vs. Husband)**

56.    Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 55 above.

57.    Husband made numerous fraudulent representations in the financial statements he provided to Peoples in order to induce Peoples to make the Loans and extend credit.

58.    In financial statements dated June 18, 2008, August 18, 2008 and October 29, 2008, Husband represented that he owned 50% of a company named M&G, LLC ("M&G").

59.    The preceding statements by Husband are fraudulent because Husband, individually, owned 0% of M&G at the time of his statements. Even Husband's trust (to whom Husband had transferred some of his ownership interest) owned just 1% of M&G at the time of these statements.

60.     In financial statements dated February 22, 2007, June 30, 2007, June 18, 2008, August 18, 2008 and October 29, 2008, Husband represented that he owned 50% of a company named 149/155 Weldon Parkway, LLC ("Weldon Parkway").

61.     The preceding statements by Husband are fraudulent because Husband had, previous to making the statements, transferred a 49.5% ownership interest to Husband's trust and 0.5% ownership interest to a corporation formed to act as manager of Weldon Parkway. Thus, Husband, individually, owned 0% of Weldon Parkway at the time he made these statements.

62.     In financial statements dated June 30, 2007, June 18, 2008, August 18, 2008 and October 29, 2008, Husband represented that he had guaranteed only half of an approximately $3,000,000 liability to Pulaski Bank or its predecessor (the "Pulaski Liability").

63.     The preceding statements by Husband are fraudulent because Husband executed a continuing *unlimited* guaranty of the Pulaski Liability.

64.     In financial statements dated June 18, 2008, August 18, 2008 and October 29, 2008, Husband did not identify his liability for a loan made on or about June 4, 2008 by Pulaski Bank to Husband, individually, for approximately $1,300,000 (the "Personal Loan").

65.     The preceding omissions by Husband are fraudulent because Husband had received—and was liable for—the Personal Loan. Indeed, Husband listed this loan as a liability on a subsequent financial statement submitted to at least one other bank.

66.     In financial statements dated June 18, 2008, August 18, 2008 and October 29, 2008, Husband represented that he owned 100% of a residential property commonly known as Unit 900 of the Crescent development (the "Crescent Unit").

67.     The preceding statements by Husband are fraudulent because Husband never individually owned the Crescent Unit. Rather, Husband and Wife took ownership of the

Crescent Unit by a deed dated April 30, 2008. Ownership of the Crescent Unit was then promptly transferred to Wife's Trust by a deed dated May 15, 2008 (which occurred before Husband submitted each of the financial statements identified in the preceding paragraph).

68. In financial statements dated February 22, 2007 and June 30, 2007, Husband represented that he owned 100% of a prior residential property commonly known as 88 Lake Forest Drive (the "Lake Forest Property").

69. The preceding statements were fraudulent because Husband did not individually own the Lake Forest Property. Rather, he was a mere co-owner with Wife.

70. Husband assigned substantial and material value to each of the assets discussed in this Count. The omitted or under-represented liabilities were likewise for substantial and material amounts.

71. The preceding statements and omissions by Husband were material to Peoples' decision to make the Loans. Peoples' reasonably relied on Husband's fraudulent statements in making the Loans and extending credit.

72. Due to Husband's fraudulent representations, Peoples has been damaged.

73. Husband concealed his fraudulent statements from Peoples and failed to ever correct or amend his financial statements to apprise Peoples of the fraudulent statements and omissions made therein. Peoples did not discover Husband's fraudulent statements and omissions until after the Collection Judgment was entered.

WHEREFORE, Peoples respectfully requests that this Court:

A. enter judgment against Husband in an amount in excess of $75,000 for (among other things) compensatory and punitive damages;

B. award Peoples' its attorneys' fees and costs; and/or

C.      award any other relief the circumstances require or to which Peoples is entitled.

## COUNT II
### (Fraudulent Conveyance vs. Wife, Wife's Trust, Husband and MHR)

74.      Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 above.

75.      Wife, Wife's Trust, Husband and MHR created MHR with Wife's Trust as sole owner with the actual intent to hinder, delay, or defraud Peoples as Husband's creditor.

76.      Wife, Wife's Trust, Husband and MHR conspired and acted to give to Husband inadequate consideration for his services rendered to and on behalf of MHR with the actual intent to hinder, delay, or defraud Peoples as Husband's creditor.

77.      Wife, Wife's Trust, Husband and MHR conspired and acted to pay to Wife and/or Wife's Trust money generated by MHR that should otherwise have been payable to Husband.

78.      The diversion of income from Husband to Wife and/or Wife's Trust was made without Husband receiving a reasonably equivalent value in exchange for the transfer.

79.      From the start of the diversion of income from Husband to Wife and/or Wife's Trust and continuing until present, Husband has been engaged in business and/or transaction(s) for which his remaining assets are unreasonably small and inadequate in relation to the business and/or transaction(s) engaged in by Husband. Among other things, Husband was a guarantor of the (defaulted) Loans at the time the diversion of income began and lacked adequate assets to cover his liabilities.

80.      From the start of the diversion of income from Husband to Wife and/or Wife's Trust and continuing until present, Husband intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Among

other things, Husband was a guarantor of the (defaulted) Loans at the time the diversion of income began.

81.　　Husband guaranteed the Loans, the Loans matured and Peoples provided notice to Husband of the maturity of the Loan before Wife, Wife's Trust, Husband and MHR began improperly diverting income to Wife and/or Wife's Trust. Since the start of this diversion of income to Wife and/or Wife's Trust, Husband was insolvent, became insolvent, or purports to be insolvent due to the diversion.

82.　　Accordingly, the diversion of income to Wife and/or Wife's Trust by Wife, Wife's Trust, Husband and MHR constitutes a continuing fraudulent conveyance, which continues to present.

WHEREFORE, Peoples respectfully requests that this Court:

A.　　enter judgment against Wife, Wife's Trust, Husband and MHR, jointly and severally, in an amount in excess of $75,000 for (among other things) compensatory and punitive damages;

B.　　set aside and/or avoid the income paid to Wife and/or Wife's Trust by MHR;

C.　　attach or impose a constructive trust upon the assets of Wife, Wife's Trust, Husband and/or MHR, including (but not limited to) Wife's Trust's ownership interest in MHR;

D.　　enter an injunction against Wife, Wife's Trust, Husband and MHR enjoining further disposition and diversion of income payable to Husband and/or prohibiting Wife, Wife's Trust, Husband and/or MHR from disposing of other assets;

E.　　appoint a receiver to manage the business affairs of Wife, Wife's Trust, Husband and/or MHR;

F.　　award Peoples' its attorneys' fees and costs; and/or

13

G.    award any other relief the circumstances require or to which Peoples is entitled.

## COUNT III
### (Action for Creditor's Bill vs. Wife, Wife's Trust, Husband and MHR)

83.    Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 82 above.

84.    Peoples has an existing unsatisfied judgment against Husband, namely the Collection Judgment.

85.    Through the fraudulent conveyances by Wife, Wife's Trust, Husband and MHR described above, Husband's assets cannot be reached by traditional means of execution following the Collection Judgment.

86.    As such, Peoples has no adequate remedy at law to execute upon the Collection Judgment against Husband.

WHEREFORE, Peoples respectfully requests that this Court:

A.    enter judgment against Wife, Wife's Trust, Husband and MHR, jointly and severally, in an amount in excess of $75,000;

B.    set aside and/or avoid the income paid to Wife and/or Wife's Trust by MHR;

C.    attach or impose a constructive trust upon the assets of Wife, Wife's Trust, Husband and/or MHR, including (but not limited to) Wife's Trust's ownership interest in MHR;

D.    enter an injunction against Wife, Wife's Trust, Husband and MHR enjoining further disposition and diversion of income payable to Husband and/or prohibiting Wife, Wife's Trust, Husband and/or MHR from disposing of other assets;

E.    appoint a receiver to manage the business affairs of Wife, Wife's Trust, Husband and/or MHR;

F.    award Peoples' its attorneys' fees and costs; and/or

G.     award any other relief the circumstances require or to which Peoples is entitled.

**COUNT IV**
**(Fraudulent Conveyance vs. Wife, Wife's Trust,**
**Husband, MSM Homes, S. Mehlman and B. Mehlman)**

87.     Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 86 above.

88.     Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman created MSM Homes with Wife's Trust, S. Mehlman, and B. Mehlman as owners with the actual intent to hinder, delay, or defraud Peoples as Husband's creditor and to render (or keep) Husband insolvent.

89.     Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman conspired and acted to give to Husband inadequate consideration for his services rendered to and on behalf of MSM Homes with the actual intent to hinder, delay, or defraud Peoples as Husband's creditor.

90.     Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman conspired and acted to pay to Wife and/or Wife's Trust money generated by MSM Homes that should otherwise have been payable to Husband.

91.     The diversion of income from Husband to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman was made without Husband receiving a reasonably equivalent value in exchange for the transfer.

92.     From the start of the diversion of income from Husband to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman and continuing until present, Husband has been engaged in business and/or transaction(s) for which his remaining assets are unreasonably small and inadequate in relation to the business and/or transaction(s) engaged in by Husband. Among

other things, Husband was a guarantor of the (defaulted) Loans at the time the diversion of income began and lacked adequate assets to cover his liabilities.

93.     From the start of the diversion of income from Husband to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman and continuing until present, Husband intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Among other things, Husband was a guarantor of the (defaulted) Loans at the time the diversion of income began.

94.     Husband guaranteed the Loans, the Loans matured and Peoples provided notice to Husband of the maturity of the Loan before Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman began improperly diverting income to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman. Since the start of this diversion of income to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman, Husband was insolvent, became insolvent, or purports to be insolvent due to the diversion.

95.     Accordingly, the diversion of income to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman by Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman constitutes a continuing fraudulent conveyance, which continues to present.

WHEREFORE, Peoples respectfully requests that this Court:

A.     enter judgment against Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman, jointly and severally, in an amount in excess of $75,000 for (among other things) compensatory and punitive damages;

B.     set aside and/or avoid the income paid to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman by MSM Homes;

16

C. attach or impose a constructive trust upon the assets of Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and/or B. Mehlman, including (but not limited to) the ownership interests of Wife's Trust, S. Mehlman, and B. Mehlman in MSM Homes;

D. enter an injunction against Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman enjoining further disposition and diversion of income payable to Husband and/or prohibiting Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and/or B. Mehlman from disposing of other assets;

E. appoint a receiver to manage the business affairs of Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman;

F. award Peoples' its attorneys' fees and costs; and/or

G. award any other relief the circumstances require or to which Peoples is entitled.

### COUNT V
**(Action for Creditor's Bill vs. Wife, Wife's Trust,**
**Husband, MSM Homes, S. Mehlman and B. Mehlman)**

96. Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 95 above.

97. Peoples has an existing unsatisfied judgment against Husband, namely the Collection Judgment.

98. Through the fraudulent conveyances by Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman, as described above, Husband's assets cannot be reached by traditional means of execution following the Collection Judgment.

99. As such, Peoples has no adequate remedy at law to execute upon the Collection Judgment against Husband.

WHEREFORE, Peoples respectfully requests that this Court:

A.     enter judgment against Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman, jointly and severally, in an amount in excess of $75,000 for (among other things) compensatory and punitive damages;

B.     set aside and/or avoid the income paid to Wife, Wife's Trust, S. Mehlman, and/or B. Mehlman by MSM Homes;

C.     attach or impose a constructive trust upon the assets of Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and/or B. Mehlman, including (but not limited to) the ownership interests of Wife's Trust, S. Mehlman, and B. Mehlman in MSM Homes;

D.     enter an injunction against Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman enjoining further disposition and diversion of income payable to Husband and/or prohibiting Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and/or B. Mehlman from disposing of other assets;

E.     appoint a receiver to manage the business affairs of Wife, Wife's Trust, Husband, MSM Homes, S. Mehlman, and B. Mehlman;

F.     award Peoples' its attorneys' fees and costs; and/or

G.     award any other relief the circumstances require or to which Peoples is entitled.

### COUNT VI
### (Fraudulent Conveyance vs. MHR and MSM Realty)

100.     Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 99 above.

101.     MSM Realty transferred all or substantially all of its assets to MHR with the actual intent to hinder, delay, or defraud Peoples as MSM Realty's creditor.

102.     The transfer of all or substantially all of MSM Realty's assets to MHR was made without MSM Realty receiving a reasonably equivalent value in exchange for the transfer.

103.    At the time of MSM Realty's transfer of all or substantially all of its assets to MHR, MSM Realty was engaged in business and/or transaction(s) for which its remaining assets were unreasonably small and inadequate in relation to the business or transaction(s) engaged in by MSM Realty. Among other things, MSM Realty was the borrower of the (defaulted) Loans and lacked adequate assets to cover its liabilities.

104.    MSM Realty had received the proceeds of the Loans, the Loans matured and Peoples provided notice to MSM Realty of the maturity of the Loans before it transferred all or substantially all of its assets to MHR.

105.    MSM Realty was insolvent, became insolvent, or purports to be insolvent as a result of the transfer.

106.    Accordingly, the transfer of assets by MSM Realty to MHR constitutes a fraudulent conveyance.

WHEREFORE, Peoples respectfully requests that this Court:

A.    enter judgment against MHR and MSM Realty, jointly and severally, in an amount in excess of $75,000 for (among other things) compensatory and punitive damages;

B.    set aside and/or avoid the transfers from MSM Realty to MHR;

C.    attach or impose a constructive trust upon the assets of MHR and/or MSM Realty;

D.    enter an injunction against MHR and MSM Realty enjoining further disposition of their assets;

E.    appoint a receiver to manage the business affairs of MHR and/or MSM Realty;

F.    award Peoples' its attorneys' fees and costs; and/or

G.    award any other relief the circumstances require or to which Peoples is entitled.

**(Action for Creditor's Bill vs. MHR and MSM Realty)**

107.     Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 106 above.

108.     Peoples has an existing unsatisfied judgment against MSM Realty, namely the Collection Judgment.

109.     Through the fraudulent conveyances by MSM Realty to MHR, as described above, MSM Realty's assets cannot be reached by traditional means of execution following the Collection Judgment.

110.     As such, Peoples has no adequate remedy at law to execute upon the Collection Judgment against MSM Realty.

WHEREFORE, Peoples respectfully requests that this Court:

A.     enter judgment against MHR and MSM Realty, jointly and severally, in an amount in excess of $75,000;

B.     set aside and/or avoid the transfers from MSM Realty to MHR;

C.     attach or impose a constructive trust upon the assets of MHR and/or MSM Realty;

D.     enter an injunction against MHR and MSM Realty enjoining further disposition of their assets;

E.     appoint a receiver to manage the business affairs of MHR and/or MSM Realty;

F.     award Peoples' its attorneys' fees and costs; and/or

G.     award any other relief the circumstances require or to which Peoples is entitled.

## COUNT VIII
### (Action for Successor Liability vs. MHR)

111.    Peoples realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above.

112.    MHR and MSM Realty share common ownership and officers, in that Husband was president and owner of MSM Realty, Husband is the sole manager of MHR and Wife's Trust is the sole owner of MHR.

113.    MHR is in the same line of business as MSM Realty, namely real estate brokerage and property management.

114.    MHR used and continues to use the assets of MSM Realty to operate its business.

115.    MHR operates its business using the same employees, contractors and/or agents as MSM Realty used to operate its business.

116.    MHR assumed ongoing property management contracts from MSM Realty.

117.    MSM Realty ceased business operations in 2010, at which time MHR continued those business operations.

118.    MHR is a mere continuation of MSM Realty. Additionally or in the alternative, the transfer of assets and/or continuation of business constitute a de facto consolidation or merger between MSM Realty and MHR.

WHEREFORE, Peoples respectfully requests that this Court:

A.      enter judgment against MHR in an amount in excess of $75,000;

B.      award Peoples' its attorneys' fees and costs; and/or

C.      award any other relief the circumstances require or to which Peoples is entitled.

### DEMAND FOR JURY TRIAL

Peoples requests a trial by jury on all counts so triable.

Dated:  June 24, 2015

Respectfully Submitted,

**BRYAN CAVE LLP**

By: /s/ Christopher M. Blaesing
        Christopher M. Blaesing, #60685MO
        Mark B. Leadlove, #33205MO
        Alicia Ragsdale, #66168MO
        BRYAN CAVE LLP
        One Metropolitan Square
        211 N. Broadway, Suite 3600
        St. Louis, Missouri  63102
        (314) 259-2000 (telephone)
        (314) 259-2020 (facsimile)
        chris.blaesing@bryancave.com
        mbleadlove@bryancave.com

        Attorneys for Plaintiff Peoples National
        Bank, N.A.